# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CARY ANTHONY BAYHAM, JR.**                    **CIVIL ACTION**

**VERSUS**                    **NO. 16-688-EWD**

**UNITED SATES COMMISSIONER**                    **CONSENT CASE**
**OF SOCIAL SECURITY ADMINISTRATION**

---

## RULING and ORDER[1]

Plaintiff Cary Anthony Bayham, Jr. ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the United States Commissioner of Social Security (the "Commissioner"), denying his Title II application for disability insurance benefits. The parties here consented to proceed before a United States Magistrate Judge[2] and the case was transferred to the undersigned Magistrate Judge for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c).[3] For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED WITH PREJUDICE**.

## I. Procedural Background

On September 15, 2013, Plaintiff protectively filed an application for disability insurance benefits under Title II, alleging disability beginning December 1, 2010 due to "back surgery, permented [sic] nerve injury in back."[4] The application was initially denied on April 4, 2014[5] and

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]." Although the Commissioner originally filed a Transcript of Administrative Record on January 23, 2017 (R. Doc. 7), the Commissioner subsequently filed an Amended and Corrected Transcript of Administrative Record on June 16, 2017 (R. Doc. 13). All references to the record of administrative proceedings will be to the Amended and Corrected Transcript filed at R. Doc. 13.
[2] R. Doc. 4.
[3] R. Doc. 5.
[4] AR p. 55.
[5] AR pp. 65-69.

Plaintiff filed a request for a hearing on May 13, 2014.[6]  A hearing was held on December 1, 2014, at which Plaintiff, represented by counsel, appeared and testified.[7]  A vocational expert, Mr. William M. Stampley, Jr. also appeared and testified.[8]  An unfavorable decision was rendered by the Administrative Law Judge ("ALJ") on May 5, 2015.[9]  On June 15, 2015, Plaintiff appealed the ALJ's decision.[10]  On August 15, 2016, the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") denied Plaintiff's request for review.[11]

On October 14, 2016, Plaintiff timely filed a Complaint in this Court.[12]  Accordingly, Plaintiff exhausted his administrative remedies with regard to his application before seeking judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.  *See,* 20 C.F.R. § 404.981.

## II.  Standard of Review

This Court's review of the Commissioner's decision denying disability benefits is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

---

[6] AR p. 72.
[7] AR pp. 29-54.
[8] AR pp. 49-54; *See*, AR p. 15.
[9] AR pp. 12-28.
[10] AR pp. 9-10.
[11] AR pp. 1-5.
[12] R. Doc. 1.

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422; *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bradley*, 809 F.2d at 1057 (quoting *Deters v. Secretary of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as a whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). However, the substantial evidence test requires more than a search of the record for evidence supporting the ALJ's findings and must take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Burkhardt v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 3:08-CV-02032-B (BH), 2009 WL 3849617, at *8 (N.D. Tex. Nov. 16, 2009) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)).

### III. The ALJ's Disability Determination

A social security disability claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting

at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505, 416.905. In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See,* 20 C.F.R. § 404.1520(a)(4). Using the five-step evaluation process, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and (5) the impairment(s) prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. At step five, the Commissioner must prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R. § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

Here, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from December 1, 2010, the alleged date of disability, through May 5, 2015, the date of the ALJ's decision.[13] At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2010.[14] At the second

---

[13] AR pp. 15, 24.
[14] AR p. 17. The ALJ also found that for purposes of his application for disability insurance benefits, Plaintiff met the insured status requirements through December 31, 2015. *Id.*

step, the ALJ found that Plaintiff had the following severe impairments: lumbar radiculopathy, degenerative joint disease and degenerative disk disease of the lumbar spine and residual effects status post laminectomy.[15] At step three of the analysis, however, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the required criteria for any listed impairment, specifying that, "In holding, the undersigned considered the listed impairments, particularly 1.02 and 1.04 of the listed impairments."[16] The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a).[17] The ALJ further found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[18]

Based on the foregoing RFC determination, the ALJ concluded that Plaintiff was unable to perform any past relevant work at step four of the analysis.[19] Proceeding to the fifth step of the analysis, the ALJ found that based on the testimony of a vocational expert, as well as Plaintiff's age, education, work experience and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.[20] The ALJ concluded

---

[15] AR pp. 17-19.
[16] AR pp. 19-20.
[17] AR pp. 20-23. "Sedentary work" is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).
[18] AR p. 20.
[19] AR pp. 23-24.
[20] AR p. 24. The ALJ did not specify what jobs Plaintiff is able to perform in her May 5, 2015 decision.

that based on Plaintiff's RFC for the full range of sedentary work, as well as Plaintiff's age, education and work experience, a finding of "not disabled" was directed by Medical Vocational Rule 201.25.[21]   As such, the ALJ concluded that Plaintiff was not disabled from December 1, 2010, the alleged onset date, through May 5, 2015, the date of the ALJ's decision.[22]

## IV. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ committed the following errors that require reversal of the ALJ's decision: (1) the ALJ erred by failing to find Plaintiff's frequent headaches were a severe impairment at step two of the sequential analysis process and by failing to consider the fact that headaches are a side effect of his prescription pain medications; (2) the ALJ erred at step three of the sequential evaluation process by failing to find that Plaintiff met the criteria of Listing 1.04(A) (Disorders of the Spine); and (3) the ALJ erred in her RFC determination.[23]   The Commissioner maintains that the decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed.[24]

## V. Analysis

### A. Substantial Evidence supports the ALJ's Determination that Plaintiff's Headaches Did Not Constitute a Severe Impairment at Step Two of the Analysis

In his first assignment of error, Plaintiff asserts the ALJ erred by not finding that his frequent headaches constitute a severe impairment at step two of the sequential analysis and by

---

[21] AR p. 24.

[22] AR p. 24.

[23] Plaintiff also raised a fourth assignment of error, alleging that remand was warranted because the original Transcript of Administrative Record showed that the ALJ who issued the May 5, 2015 decision was not the same ALJ who presided over the December 1, 2014 administrative hearing, so the May 5, 2015 decision was based on a credibility assessment by an ALJ who did not hear Plaintiff's testimony.  R. Doc. 12 at p. 9; *See*, R. Doc. 7-3 at pp. 13-55. However, in the Reply memorandum, Plaintiff appears to concede that this argument was rendered moot when the Commissioner filed the Amended and Corrected Transcript of Administrative Record (R. Doc. 13), showing that the same ALJ who presided over the December 1, 2014 hearing also authored the May 5, 2015 decision.  R. Doc. 18 at p. 1, n. 1; *See*, R. Doc. 13-3 at pp. 13-55.  Because Plaintiff's argument regarding this assignment of error was rendered moot by the filing of the Amended and Corrected Transcript of Administrative Record, Plaintiff's fourth assignment of error is not addressed in this Ruling and Order.

[24] *See generally*, R. Doc. 17.

failing to consider the side effects of his prescribed pain medication, namely headaches.[25]  Plaintiff claims that he received regular treatment from a neurologist, Charles Kaufman, M.D., for chronic headaches from January 3, 2011 to April 30, 2013.[26]  Plaintiff points out that on April 30, 2013, Dr. Kaufman noted that Plaintiff was still having 13 to 14 headache days a month and that, "clearly the Percocet is going to be a problem with his headaches and causing the rebound and probably interfere with control of headache."[27]  Dr. Kaufman further noted on April 30, 2013 that Plaintiff falls into the "chronic daily headache class," but he could not take Plaintiff off of Percocet due to Plaintiff's back pain, so he recommended approval of Botox injections for Plaintiff's headaches.[28]

Plaintiff argues that the ALJ discussed Dr. Kaufman's April 30, 2013 treatment note, but relied upon a January 2, 2014 treatment note from Joseph Bozzelle, Jr., M.D., wherein Plaintiff reported improvements in his headaches, to discount the severity of the impairment.[29]  Plaintiff, however, claims that he reported ongoing problems with headaches to Dr. Bozzelle on January 30, 2014.[30]  Plaintiff further asserts that the ALJ erred by failing to find that his pain medications cause side effects, including headaches, that prevent him from working because Dr. Kaufman specifically noted that the narcotic pain medication could be contributing to Plaintiff's headaches.[31]  Plaintiff contends that these errors are not harmless because the vocational expert testified that if Plaintiff's headaches caused him to miss work once every one or two weeks, Plaintiff would be unable to maintain employment.[32]

---

[25] R. Doc. 12 at p. 9.
[26] R. Doc. 12 at p. 10 (*citing* AR pp. 187-220).
[27] R. Doc. 12 at p. 10 (*quoting* AR p. 187).
[28] R. Doc. 12 at p. 10 (*quoting* AR p. 187).
[29] R. Doc. 12 at pp. 10-11 (*citing* AR p. 18).
[30] R. Doc. 12 at p. 11 (*citing* AR p. 370).
[31] R. Doc. 12 at pp. 10-11 (*citing* AR p. 187).
[32] R. Doc. 12 at p. 11 (*citing* AR pp. 52-53).

In response, the Commissioner maintains that the ALJ did not error at step two of the sequential evaluation prcoess. The Commissioner cites to several treatment notes contained in the record, from both Dr. Kaufman and Dr. Bozzelle, and argues that they indicate improvement in Plaintiff's headaches and that Plaintiff denied having any headaches during some visits.[33] The Commissioner contends that these medical records support the ALJ's determination that Plaintiff's headaches were not a severe impairment. However, even if the ALJ erred in concluding Plaintiff's headaches were not a severe impairment, the Commissioner argues the error was harmless because the ALJ proceeded past step two of the sequential evaluation process and found Plaintiff was not disabled at step five of the analysis.[34] The Commissioner further asserts that Plaintiff has shown no prejudice from the ALJ's alleged error at step two of the sequential analysis because Plaintiff has not cited any medical opinion evidence showing that his headaches caused any specific functional limitations beyond those included in the ALJ's RFC assessment.[35]

## 1. Determining Severity of an Impairment at Step Two of the Sequential Evaluation Process

At step two of the sequential evaluation process, the Commissioner must determine whether the claimant's "impairment or combination of impairments" is severe. According to the regulations, if the claimant does "not have any impairment or combination of impairments which significantly limits" his or her "physical or mental ability to do basic work activities," the Commissioner "will find" the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

---

[33] R. Doc. 17 at pp. 4-5 (*citing* AR pp. 192, 197, 212, 215, 321, 326, 336, 372, 380, 447, 451).

[34] AR. Doc. 17 at p. 5 (citing *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (concluding that an ALJ's failure to determine the severity of an impairment at step two was harmless error because the analysis proceeded past step two of the sequential evaluation process)).

[35] R. Doc. 17 at p. 5.

> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.921(b)(1)-(6).

Despite the more stringent language in the regulations, the Fifth Circuit and others have clarified that, "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also, Anthony v. Sullivan*, 954 F.2d 289, 293 n. 5 (5th Cir. 1992) (step two only requires a "*de minimis* showing"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint"). Further, "[B]ecause step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004) (*citing* SSR 85–28, 1995 WL 56856, at *4 (Jan. 1, 1985) ("Great care should be exercised in applying the not severe impairment concept.")). "The severity determination is based solely on medical factors." *Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 739 (10th Cir. 2007). The claimant's "age, education, and work experience" cannot be considered. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Here, the ALJ determined that Plaintiff's headaches did not constitute a severe impairment based upon "the paucity of treatment . . . combined with fact [sic] that there is no evidence of

exertional limitations or side effects from the claimant's medications."[36] The ALJ also found that the record showed Plaintiff "did not need frequent physician intervention, hospitalization or emergency room treatment" for the condition.[37] In reaching this conclusion, the ALJ reviewed Plaintiff's medical records and found that Plaintiff reported daily headaches to Dr. Kaufman on January 3, 2011, but reported that the headaches had improved on February 14, 2011.[38] Plaintiff also reported on February 14, 2011 that he had fewer severe headaches and that he had gone some periods without any headaches.[39] The ALJ also found that by May 2011, Plaintiff's next visit with Dr. Kaufman), Plaintiff's headaches were noted "to have all but resolved."[40] The ALJ pointed out that Dr. Kaufman's May 18, 2011 progress note shows Plaintiff reported that his only problems were back and leg pain, Plaintiff's EEG was normal and that Dr. Kaufman opined that Plaintiff was "quite stable from a neurological standpoint."[41]

The ALJ further found that in October 2011, Plaintiff was under more stress and reported to Dr. Kaufman that his headaches had returned.[42] However, in October 2012, Plaintiff's headaches had improved and Dr. Kaufman noted that the headaches may be a rebound from Plaintiff's excessive use of medication for his back pain.[43] The ALJ found that on June 7, 2012, Plaintiff reported to Dr. Kaufman that his headaches were controlled, but that he was experiencing some depression.[44] On October 16, 2012, Plaintiff reported to Dr. Kaufman that he had headaches every three to four days, rather than daily, although cerebellar testing revealed no abnormalities.[45]

---

[36] AR p. 18.
[37] AR p. 18.
[38] AR p. 17; *See*, AR pp. 215, 219.
[39] AR p. 17; *See*, AR p. 215.
[40] AR p. 17; *See*, AR p. 212.
[41] AR p. 17; *See*, AR p. 212.
[42] AR p. 17; *See*, AR p. 208.
[43] AR p. 17; *See*, AR p. 192.
[44] AR p. 17; *See*, AR p. 197.
[45] AR pp. 17-18; *See*, AR p. 192.

The ALJ further found that Dr. Kaufman's April 30, 2013 progress note shows Plaintiff reported 13 to 14 headaches per month that were likely the result of Plaintiff's Percocet use, which was "causing the rebound and probably interfer[ing] with control of headache."[46] The ALJ also reviewed a January 2, 2014 treatment note from Dr. Bozzelle, wherein Plaintiff reported improvement in his headaches.[47]

Although Plaintiff complains that the ALJ ignored the January 30, 2014 treatment note from Dr. Bozzelle, in which Plaintiff reported, "He does have some headaches,"[48] Plaintiff fails to acknowledge the fact that Dr. Bozzelle's treatment notes from February 27, 2014,[49] March 27, 2014,[50] April 24, 2014,[51] May 22, 2014[52] and November 7, 2014[53] are devoid of any headache complaints by Plaintiff. Plaintiff also fails to address Dr. Bozzelle's June 13, 2014 treatment note, which states that, "He has a couple of headaches a week and his medicines help."[54]

Review of the objective medical evidence of record shows that the ALJ's determination that Plaintiff' headaches do not constitute a severe impairment is supported by substantial evidence. The treatment notes from Dr. Kaufman and Dr. Bozzelle, discussed above, show that Plaintiff's headaches improved over time and that by June 2014, Plaintiff reported having only "a couple of headaches a week" and that "his medicines help."[55] Plaintiff emphasizes that Dr. Kaufman's final progress note on April 30, 2013 states that Plaintiff was still "having 13-14 headache days a month," and that Plaintiff "still falls into the chronic daily headache class." [56]

---

[46] AR p. 18; *See*, AR p. 187.
[47] AR p. 18 (*citing* AR pp. 366-414). *See*, AR p. 372.
[48] R. Doc. 12 at p. 11 (*citing* AR p. 370).
[49] AR pp. 368-69.
[50] AR pp. 453-54.
[51] AR pp. 451-52.
[52] AR pp. 448, 450.
[53] AR pp. 455-56.
[54] AR pp. 447.
[55] AR p. 447.
[56] AR p. 187.

However, the objective medical evidence shows that Plaintiff saw Dr. Bozzelle at least 15 times after April 30, 2013,[57] and only four of Dr. Bozzelle's treatment notes from that time mention Plaintiff's headaches.[58] Those four treatment notes show that Plaintiff reported having headaches "two to three times a week" on August 21, 2013,[59] Plaintiff reported that his headaches "are better as far as severity and frequency" on January 2, 2014,[60] Plaintiff reported having "some headaches" on January 30, 2014 and Plaintiff reported having "a couple of headaches a week" on June 13, 2014.[61] Thus, the objective medical evidence of record supports the ALJ's determination at step two of the sequential evaluation process.[62]

Although Plaintiff essentially asks this Court to reweigh the medical evidence, the case law is clear that in applying the substantial evidence standard, the Court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the ALJ to decide and in the instant case, the ALJ resolved such conflicts in favor of finding that Plaintiff's headaches do not constitute a severe impairment because they cause no more than a slight abnormality that do not significantly limit Plaintiff's ability to perform basic work-related activities.[63] As shown above, the ALJ's determination at step two of the sequential analysis is supported by substantial evidence and therefore, does not constitute reversible error.

---

[57] AR pp. 368-87, 447-56.
[58] *See*, AR pp. 370, 372, 380, 447.
[59] AR p. 380.
[60] AR p. 372.
[61] AR p. 380.
[62] The ALJ's determination at step two of the sequential analysis is further supported by the fact that the administrative record contains no objective medical evidence regarding the severity of Plaintiff's headaches or whether Plaintiff's headaches actually limited his ability to function.
[63] *See*, AR p. 18.

Further, as the Commissioner points out,[64] any alleged error in the ALJ's step two

determination was harmless because the ALJ proceeded through the sequential evaluation process

and found that Plaintiff's impairments did not prevent him from working at step five of the

analysis. *See*, *Herrera v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 899, 903 (5th Cir. 2010) (ALJ's

failure to assess the severity of claimant's impairments at step two was not a basis for remand

where ALJ proceeded to step five of the analysis and found claimant not disabled) (citing *Adams*

*v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1988) (ALJ's failure to make a severity finding at step two

not a basis for remand where ALJ proceeded to later steps of the sequential analysis)).

Accordingly, even if the ALJ erred at step two of the sequential analysis by failing to find

Plaintiff's headaches constitute a severe impairment, any such error was harmless.

The Court further finds no error in the ALJ's consideration of the adverse side effects

caused by Plaintiff's prescription pain medication on his ability to work. As previously mentioned,

Plaintiff argues the ALJ incorrectly stated that there was "no evidence of . . . side effects from

claimant's medications," even though Dr. Kaufman found that Plaintiff's headaches were due, in

part, to his prescribed narcotic pain medication (Percocet).[65] The thrust of Plaintiff's argument is

that the ALJ erred by failing to consider the impact of headaches, caused by his prescription pain

medication, on his ability to work. Thus, Plaintiff is essentially re-urging his prior argument that

the ALJ erred by failing to find his headaches constitute a severe impairment. Because the Court

has already found no error in the ALJ's determination at step two of the sequential evaluation

process, Plaintiff's argument regarding the ALJ's failure to consider the side effects of his

prescription pain medication lacks merit. Further, the ALJ specifically recognized that, "Dr.

Kaufman noted the headaches may be a rebound from excessive medication use for his back

---

[64] R. Doc. 17 at p. 5.
[65] R. Doc. 12 at pp. 10-11 (*citing* AR p. 187).

pain."[66] Thus, the ALJ specifically considered the fact that Plaintiff's headaches may be caused by his prescription pain medication in making her step two determination. Plaintiff has shown no error in this consideration

### B. The ALJ Erred in Her Listing Analysis at Step Three, But the Error was Harmless

In his second assignment of error, Plaintiff asserts that the ALJ erred at step three of the sequential analysis by failing to find Plaintiff's lumbar impairment met the criteria of Listing 1.04A (Disorders of the spine)[67] from at least February 14, 2011 (date of lumbar MRI) through August 23, 2012 (date of lumbar surgery), which supports a finding of disability.[68] Plaintiff contends that the February 14, 2011 MRI of his lumbar spine showed compromise of the S1 nerve root due to a herniated nucleus pulposus, which satisfies the threshold requirement of Listing 1.04, and that nerve root impingement was confirmed during surgical exploration on August 23, 2012.[69] Plaintiff further asserts that the clinical findings of Henry Louis Eiserloh, III, M.D. throughout 2011 show that Plaintiff met the other requirements of Listing 1.04A at various times, including neuro-anatomic distribution of pain, limitation of motion of spine, motor loss, sensory or reflex loss and positive straight-leg raising testing.[70] Thus, Plaintiff asserts the ALJ's finding that

---

[66] AR at pp. 17-18 (*citing* AR pp. 185-224).
[67] Listing 1.04(A) provides:

> 1.04 Disorders of the spine (*e.g.,* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R Part 404, Subpart P, Appendix 1, Section 1.04.
[68] R. Doc. 12 at p. 12 (*citing* AR pp. 343-46 and 405).
[69] R. Doc. 12 at p. 12 (*citing* AR pp. 343, 405). The Court notes that although Plaintiff refers to a February 14, 2011 MRI of the lumbar spine at AR p. 405, the medical record at AR p. 405 is an MRI of Plaintiff's lumbar spine dated March 1, 2011 MRI. *See*, AR p. 405. The administrative record does not include an MRI dated February 14, 2011.
[70] R. Doc. 12 at p. 13 (*citing* AR pp. 422-34).

Plaintiff did not meet the criteria for Listing 1.04(A) is not supported by substantial evidence. Plaintiff further asserts that the ALJ erred by not providing a sufficient explanation for her step three finding, which Plaintiff asserts is a "bare conclusion [] beyond meaningful judicial review."[71]

The Commissioner asserts that the ALJ's step three finding is supported by substantial evidence because the Social Security Administration has clarified that the requisite level of severity for Listing 1.04A is only met when all of the medical criteria listed in paragraph A are simultaneously present.[72] Because substantial evidence shows that Plaintiff did not satisfy all of Listing 1.04A's criteria simultaneously for a continuous 12-month period, the Commissioner asks the Court to affirm the ALJ's decision. The Commissioner points out that Dr. Kaufman's treatment records from 2011 and 2012 and Dr. Eiserloh's 2011 treatment records show that Plaintiff had normal motor and sensory findings and do not show that Plaintiff had positive straight leg raising tests in both the sitting and supine positions, as required by Listing 1.04A.[73] While acknowledging that the ALJ did not provide a sufficient explanation for her step three finding, the Commissioner asserts that the ALJ discussed some of the relevant findings in other sections of her decision.[74] The Commissioner further asserts that any error at step three of the analysis was harmless because substantial evidence supports the ALJ's finding that Plaintiff did not meet or medically equal all of Listing 1.04A's criteria.[75]

---

[71] R. Doc. 12 at p. 13 (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).
[72] R. Doc. 17 at p. 7 (*citing* Social Security Administration's Acquiescence Ruling (AR) 15-1(4), 2015 WL 5697481, at *4 (Sept. 23, 2015) ("Listing 1.04A uses the conjunction 'and' when enumerating the medical criteria in order to establish that the entire set of criteria must be present at the same time on examination."). The Commissioner acknowledges that AR 15-1(4) became effective September 23, 2015, after the ALJ's May 5, 2015 decision in this case, but asserts that AR 15-1(4) articulates the Social Security Administration's national policy regarding Listing 1.04A claims. R. Doc. 17 at p. 7, n. 2.
[73] R. Doc. 17 at pp. 8-9 (*citing* AR pp. 197, 202, 219, 422, 424, 426, 428, 430, 434).
[74] R. Doc. 17 at p. 11.
[75] *Id.*

1. **Step Three Analysis Standard**

At step three of the sequential evaluation process, Plaintiff "has the burden of establishing that his impairment meets or equals the criteria for presumptive disability described in the listings." *Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (citing *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) (emphasis in original). In determining whether Plaintiff's impairment meets or equals the criteria of a Listing, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant whose impairment or combination of impairments meets or equals the criteria of a Listing is disabled and entitled to benefits. For that reason, the criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

At step three of the sequential analysis process, the ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how the ALJ reached the conclusion that the claimant's symptoms are insufficiently severe to meet any listed impairment. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). A "bare conclusion" that a claimant does not meet the criteria of any Listing "is beyond meaningful judicial review." *Id*. (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). However, even if a court determines that the ALJ erred in failing to state the reasoning for an adverse determination at step three, a reviewing court must still determine whether the error was harmless. *Audler*, 501 F.3d at

448 (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). Procedural perfection is not required in administrative proceedings and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "That showing typically requires a claimant to demonstrate that her impairment satisfies the criteria of a particular listing." *Smith v. Astrue*, 914 F. Supp. 2d 764, 784 (E.D. La. 2012) (citing *Audler*, 501 F.3d at 448-49).

### 2. The ALJ Erred in Her Step Three Analysis, But the Error Was Harmless

Here, the ALJ determined at step three of the sequential evaluation process that, "The claimant's impairments considered separately or in combination do not equal or meet a listing for disability. From the record, it is not apparent that the claimant is disabled. In reaching this conclusion, the undersigned considered the opinions of the examiners with Disability Determination Services and the claimant's treating sources who evaluated the claimant and reached a similar conclusion."[76] The ALJ further explained, "In holding, the undersigned considered the listed impairments, particularly 1.02 and 1.04 of the listed impairments."[77] The Court finds that the ALJ erred at step three of the sequential analysis by failing to explain why Plaintiff failed to meet the criteria of any particular impairment. Summarily concluding that Plaintiff did not meet or equal the criteria of any Listing, including Listing 1.02 and 1.04, is insufficient to permit meaningful review by this Court. *See*, *Audler*, 501 F.3d at 448. Nevertheless, the Court finds the ALJ's error at step three of the analysis was harmless because Plaintiff has not met his burden of establishing that he satisfied the specified criteria of Listing 1.04A for a period of 12 months or more.

---

[76] AR pp. 19-20.
[77] AR p. 20.

To meet the criteria of Listing 1.04A, a claimant must show a disorder of the spine, such as degenerative disc disease or herniated nucleus pulposus (disk herniation) "resulting in compromise of the nerve root . . . or the spinal cord," with: (1) "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain;" (2) "limitation of motion of the spine;" (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss;" and (4) "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."[78] Plaintiff contends that he met the criteria of Listing 1.04A from February 14, 2011, the date of his lumbar MRI, through August 23, 2012, the date of his back surgery, based upon the 2011 treatment notes from Dr. Eiserloh.[79] Review of the objective medical evidence of record, however, does not support Plaintiff's position.

As an initial matter, the lumbar spine MRI relied upon by Plaintiff is dated March 1, 2011.[80] As Plaintiff points out, the March 1, 2011 MRI did reveal disk protrusion with S1 nerve root impingement at the L5-S1 level, disk protrusion L4-5, and T12-L1 broad disk protrusion.[81] Dr. Eiserloh's March 23, 2011 treatment note shows that Plaintiff had a decreased range of motion in his lumbar spine and testing showed positive straight leg raise on the right, no atrophy and symmetric reflexes in the lower extremities.[82] On April 25, 2011, Dr. Eiserloh found that there was no change in Plaintiff's lumbar spine or the neurology of his lower extremities, but testing showed positive straight leg raise on the right and negative straight leg raise on the left.[83] On June 16, 2011, Dr. Eiserloh found that Plaintiff had "mild spasm," "tender paraspinals" and decreased range of motion in the lumbar spine.[84] The June 16, 2011 treatment note also states that testing

---

[78] 20 C.F.R Part 404, Subpart P, Appendix 1, Section 1.04A.
[79] R. Doc. 12 at pp. 12-13 (*citing* AR pp. 343-46, 405, 422-434).
[80] AR p. 405.
[81] AR p. 405.
[82] AR p. 434.
[83] AR p. 432.
[84] AR pp. 429-30.

showed positive straight leg raise on the right and negative straight leg raise on the left, and "[d]ecreased sensation of S1. Absent S1 reflex on the right."[85]

On August 22, 2011, Dr. Eiserloh found "[t]ender paraspinal musculature" in Plaintiff's lumbar spine and, with respect to range of motion, "[e]xtension with rotation mildly exacerbates back pain. He can flex forward 70 degrees with mild pain and pain with return to a neutral state. Side bending within normal limits."[86] Dr. Eiserloh also found that tests showed positive straight leg raise on the right with pain into Plaintiff's thigh and the neurology of Plaintiff's lower extremities was normal for motor and sensory, noting that "He does have an absent right S1 reflex."[87] In the September 19, 2011 treatment note, Dr. Eiserloh again found tender paraspinal musculature in the lumbar spine and, with respect to range of motion, "[e]xtension with rotation exacerbates low back pain. He can flex forward 90 degrees with pain in the low back and hamstrings with no pain with return to a neutral state. Side bending 20 degrees with no pain."[88] Tests further showed positive straight leg raise on the right with pain going into Plaintiff's thigh and into his distal thigh, and the neurology of his lower extremities showed that, "He does have a decreased EHL at 4+/5 with absent S1 reflex on the right. Other neurology is normal for motor, sensory, and reflex function."[89]

On October 24, 2011, Dr. Eiserloh again found tender paraspinal musculature in Plaintiff's lumbar spine and that Plaintiff had restricted range of motion, noting that, "Extension with rotation does exacerbate back pain. He can flex forward 90 degrees with pain and pain with return to a neutral state. Side bending 20 degrees with no pain."[90] Testing showed positive straight leg raise

---

[85] AR pp. 429-30.
[86] AR pp. 427-28.
[87] AR p. 428.
[88] AR p. 425.
[89] AR p. 426.
[90] AR p. 424.

on the right and, with respect to neurology of the lower extremities, Plaintiff had a "4/5 right EHL. All other motor groups are within normal limits. He does have a diminished S1 reflex on the right."[91] Finally, on November 23, 2011, Dr. Eiserloh found "tender paraspinals" and decreased range of motion in Plaintiff's lumbar spine, positive straight leg raise on the right, negative straight leg raise on the left, negative Patrick's test and "[n]o atrophy or atonia."[92] With respect to neurology in the lower extremities, Dr. Eiserloh found that Plaintiff's "[r]ight EHL is 4/5. He does fatigue with repetitive plantarflexion [sic] as well."[93]

While Dr. Eiserloh's treatment notes show that Plaintiff exhibited some of the criteria of Listing 1.04A in 2011, as the Commissioner points out,[94] Plaintiff has failed to demonstrate positive straight leg raising tests in both the sitting and supine position during the relevant period. In each of his treatment notes, Dr. Eiserloh found "positive straight leg raise on the right,"[95] but none of the treatment notes state whether the test was performed in both the sitting and supine positions. Courts in this Circuit have consistently held that Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions. *See*, *Woodridge v. Colvin*, Civ. A. No. 15-485-SDD-EWD, 2016 WL 4253971, at *5 (M.D. La. July 14, 2016) ("Without such information [regarding whether the test was performed in both the sitting and supine positions], the ALJ correctly found Plaintiff failed to meet his burden of establishing his impairment met Listing 1.04A."); *Wyre v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 13-201-JWD-RLB, 2015 WL 589738, at *6 (M.D. La. Feb. 11, 2015) (Plaintiff failed to satisfy requirements of Listing 1.04A where, *inter alia,* neither of the two positive straight leg raising tests in the record indicated whether tests

---

[91] *Id.*
[92] AR p. 422.
[93] *Id.*
[94] R. Doc. 17 at p. 9.
[95] *See*, AR pp. 422, 424, 426, 428, 430, 432.

were performed in both the seated and supine positions); *Nieves v. Astrue*, Civ. A. No. EP-12-CV-069-RFC, 2013 WL 1192013 at *7 (W.D. Tex. March 21, 2013) (Listing 1.04A was not met where straight leg raising tests were only intermittently positive and failed to indicate the position – sitting or supine – in which they were performed); *Miller v. Astrue*, Civ. A. No. 11-275-JJB-DLD, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step three because "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions."); *Carrillo v. Astrue*, Civ. A. No. SA-09-CA-44-XR, 2010 WL 2136438, at *5 (W.D. Tex. May 26, 2010) (finding substantial evidence supported ALJ's determination that claimant did not meet the requirements of Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, for a period of 12 continuous months).

Because Plaintiff has not shown "positive straight-leg raising test (sitting and supine)," as required by Listing 1.04A[96] for a period of 12 months, Plaintiff has not met his burden of establishing that his back condition meets or equals the criteria for any listed impairment. Accordingly, any error in the ALJ's failure to explain why Plaintiff failed to meet the criteria of any particular impairment at step three of the sequential evaluation process was harmless.[97]

### C.  Substantial Evidence Supports the ALJ's RFC Determination

In his third assignment of error, Plaintiff alleges that the ALJ erred in evaluating the medical opinion evidence, which resulted in a flawed RFC that failed to account for Plaintiff's

---

[96] 20 C.F.R Part 404, Subpart P, Appendix 1, Section 1.04.
[97] Because Plaintiff has not met his burden of proving his back condition caused positive straight-leg testing in the seated and supine positions for a 12-month period, as required by Listing 1.04A, the Court does not reach the Commissioner's argument that the severity for Listing 1.04A is only met when all of the medical criteria listed in paragraph A are simultaneously present, as stated in the Social Security Administration's Acquiescence Ruling (AR) 15-1(4), 2015 WL 5697481, at *4 (Sept. 23, 2015). *See*, R. Doc. 17 at pp. 7-8.

need to frequently alternate between sitting and standing positions.[98]  Plaintiff complains that

although the ALJ gave "great weight" to Dr. Eiserloh's April 25, 2011 opinion that Plaintiff could

return to "sedentary duty status with frequent position changes and no lifting over 10 pounds," the

ALJ failed to provide for a sit/stand option in the RFC assessment.[99]  Instead, the ALJ found that

Plaintiff has the RFC to perform the full range of sedentary work, which requires the ability to sit

for a total of six hours in an eight-hour workday, as well as the ability to sit for uninterrupted

intervals of two hours.[100]  As such, Plaintiff argues the ALJ's RFC assessment is not supported by

substantial evidence because it is directly contradicted by Dr. Eiserloh's medical opinion that

Plaintiff requires "frequent position changes" and the ALJ failed to explain why that portion of

Dr. Eiserloh's opinion was disregarded.  Plaintiff further asserts that the ALJ's error was not

harmless because the vocational expert testified that an individual who requires positional changes

from sitting to standing multiple times throughout the day would be unable to perform any

occupations.[101]  The Commissioner maintains that the ALJ's RFC assessment is supported by

substantial evidence, noting that the ALJ is tasked with weighing the evidence and can reject the

opinion of any physician when the evidence supports a contrary conclusion.[102]

### 1.  The ALJ's Review of the Evidence of Record

The ALJ "is responsible for assessing the medical evidence and determining the claimant's

residual functional capacity."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  The ALJ's

RFC decision can be supported by substantial evidence even if the ALJ does not specifically

discuss all the evidence that supports his or her decision or all the evidence that he or she rejected.

---

[98] R. Doc. 12 at p. 9.
[99] R. Doc. 12 at pp. 13-14, n. 28 (*quoting* AR p. 432; *citing* SSR 96-9p 1996 WL 374185 (July 2, 1996); SSR 83-12, 1983 WL 31253 (Jan. 1, 1983) ("A sit/stand option refers to the need to alternate from a sitting to a standing position (and vice versa) at periods much shorter than the prolonged sitting required of a full range of 'sedentary work.'")).
[100] R. Doc. 12 at p. 13 (*citing* SSR 96-9p).
[101] R. Doc. 12 at p. 14 (*citing* AR pp. 52-53).
[102] R. Doc. 17 at pp. 12-13.

*Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

In determining Plaintiff's RFC, the ALJ first considered the Plaintiff's testimony from the December 1, 2014 administrative hearing, during which Plaintiff stated that he has lower back and bilateral lower extremity pain with numbness and tingling radiculopathy symptoms.[103] Plaintiff also testified that he can sit for 30 minutes before he has to adjust, he can stand for 25 minutes before he has symptoms and that he has to switch between standing and sitting throughout the day.[104] The ALJ found Plaintiff's allegations were not fully credible with regard to the severity of his symptoms. However, the ALJ found Plaintiff credible to the extent that he would experience back pain with heavy lifting or prolonged standing and, therefore, reduced the RFC to accommodate these limitations.[105] The ALJ further found that Plaintiff's allegations were not fully consistent with the record, and although Plaintiff was given "every consideration," the ALJ did not find Plaintiff's allegations that he is incapable of all work activity to be credible.[106]

Turning next to the medical evidence of record, the ALJ found that the March 1, 2011 MRI of Plaintiff's lumbar spine revealed disk protrusion with S1 nerve root impingement at the L5-S1

---

[103] AR p. 20; *See*, AR pp. 40-42.
[104] AR p. 20; *See*, AR pp. 45-46.
[105] AR p. 20.
[106] AR pp. 20-21.

level, disk protrusion L4-5 and T12-L1 broad disk protrusion.[107]  The ALJ found that on April 25,

2011, Dr. Eiserloh released Plaintiff to return to work on a modified duty status, sedentary duty,

with frequent position changes and no lifting over 10 pounds.  The ALJ gave great weight to this

opinion "because it is consistent with the record, that shows the claimant to have some limitations

but ambulatory for sedentary work."[108]  The ALJ also noted that Plaintiff underwent nerve blocks

without sustained benefits.[109]

  The ALJ found that on August 15, 2011, Plaintiff reported to Kelly J. Scrantz, M.D., that

a previous back injury had resolved with injections, but that his back was now worse and his legs

were also painful, but not as painful as his back.[110]  Dr. Scrantz noted that Plaintiff was able to

ambulate well with a limp to his right leg and somewhat of an antalgic gait.  Dr. Scrantz found that

Plaintiff's mobility was normal, but limited to some degree by pain, and that a straight leg raise

test was normal.[111]  However, on October 24, 2011, Plaintiff was noted by Dr. Eiserloh to have

positive straight leg raise on the right.[112]

  The ALJ next found that Plaintiff underwent back surgery on August 23, 2012 by Dr.

Scrantz.[113]  Dr. Scrantz's treatment note from September 10, 2012, shows that Plaintiff was status

post L4-S1 surgery and reported back pain, joint pain, and leg pain at night, as well as tingling,

numbness and difficulty walking.[114]  On October 16, 2012, Plaintiff reported to Dr. Kaufman that

---

[107] AR p. 21 (*citing* AR pp. 366-414); *See*, AR p. 405.
[108] AR p. 21; *See*, AR p. 432.
[109] AR p. 21 (*citing* AR pp. 415-46); *See*, AR p. 442-45.
[110] AR p. 21; *See*, AR pp. 360-61.
[111] AR p. 21 (*citing* AR pp. 312-65); *See*, AR pp. 363-64.  The Court notes that the August 15, 2011 treatment note states that Plaintiff was "about 8 months out from his injury," and that Plaintiff had a prior back injury that resolved after Plaintiff received injections, such that Plaintiff "really had not been treating over the past decade for his lower back up until this happened."  AR p. 360.  According to the medical evidence of record, Plaintiff did not have back surgery until August 23, 2012.  *See*, AR pp. 343-46.
[112] AR p. 21 (*citing* AR pp. 415-46); *See*, AR p. 423.
[113] AR p. 21; *See*, AR pp. 343-46.
[114] AR p. 21; *See,* AR p. 336.

he has some spasms when he walks, but that his back pain had improved since surgery.[115] Dr. Kaufman noted that Plaintiff's gate was normal and that there was a well-healed midline lower lumbar sacral tear.[116] The November 7, 2012 treatment note from Dr. Scrantz shows that Plaintiff continued to report lower back pain and numbness in both legs, and that Plaintiff was waiting for "pain management approval."[117] The ALJ found that X-ray's from the same date revealed fusion L4-S1 with no evidence of complication.[118] Dr. Scrantz's treatment note from February 7, 2013 shows that Plaintiff was still having lower back pain and spasms and both of his legs felt weak, but his pain was better.[119] Dr. Scrantz found that Plaintiff had full range of motion in all joints, normal muscle strength and tone, normal gait, normal posture, no paraspinal spasms and normal lower extremity strength in both legs.[120] The ALJ found that X-rays dated February 7, 2013 revealed prior fusion L4-S1 with no evidence of complication or significant interval change.[121]

The ALJ notes that in a January 25, 2013 treatment note, Dr. Bozzelle found that Plaintiff had a very solid fusion, but that Plaintiff still suffers from bilateral leg and bilateral back pain.[122] Dr. Bozzelle diagnosed Plaintiff with chronic pain syndrome, post laminectomy syndrome with radiculopathy and spondylosis, lumbar radiculopathy, lower extremity numbness and pain and flat affect and depression from lack of functioning.[123] The ALJ found that a spinal cord stimulator was installed on March 3, 2013, but that Plaintiff was anxious about installing the stimulator on March 22, 2013 because he was in extreme pain.[124] The ALJ also found that on April 17, 2013, Plaintiff

---

[115] AR p. 21; *See,* AR p. 192.
[116] AR p. 21; *See,* AR p. 192.
[117] AR p. 21; *See,* AR pp. 326-27.
[118] AR p. 21; *See,* AR p. 328.
[119] AR p. 21; *See,* AR p. 319.
[120] AR p. 21; AR pp. 321-22.
[121] AR p. 21; *See,* AR p. 318.
[122] AR p. 21; *See,* AR pp. 398-99.
[123] AR p. 21; *See,* AR p. 400.
[124] AR p. 21 (*citing* AR pp. 366-414); *See,* AR p. 390. The Court notes that the spinal cord stimulator was implanted on March 25, 2013. *See,* AR p. 411.

reported to Dr. Bozzelle that the stimulator reduced his pain to a three out of ten in severity, improved his posture and improved his ability to perform activities of daily living.[125] The April 17, 2013 treatment note shows that Dr. Bozzelle recommended Plaintiff for permanent implantation.[126] The ALJ noted that a May 8, 2013 X-ray "revealed no significant interval change."[127]

On May 22, 2013, Plaintiff reported to Dr. Bozzelle that his pain was a six out of ten in pain severity and that he was still waiting for the permanent stimulator.[128] According to the ALJ, on September 3, 2013, Plaintiff reported that his back pain was worse since his August 23, 2012 surgery, but that his right leg had improved.[129] The ALJ found that Dr. Bozzelle's September 27, 2013 treatment note shows Plaintiff reported no radiculopathy symptoms and that he could not afford the permanent spinal cord stimulator implant due to his financial situation.[130] Dr. Bozzelle also noted that Plaintiff was to continue to modify his activities and return back in a month for re-evaluation.[131]

The ALJ then reviewed a June 19, 2013 treatment note from Dr. Scrantz, who opined that Plaintiff's lumbar spine X-rays revealed only hardware and interbodies in place with no mal-alignment and that Plaintiff's surgery site was healing well.[132] Dr. Scrantz also found that Plaintiff had shown improvement with the spinal stimulator trial and Dr. Scrantz "felt" that Plaintiff's complaints of burning with numbness in his legs was residual nerve damage, but that Plaintiff was

---

[125] AR p. 21; *See,* AR p. 388.
[126] AR p. 21; *See,* AR p. 388.
[127] AR p. 21 (*citing* AR pp. 312-65); *See,* AR p. 317.
[128] AR p. 21; *See,* AR p. 386.
[129] AR pp. 21-22 (*citing* AR pp. 415-46). The Court is unable to locate a medical record dated September 3, 2013 in the administrative record.
[130] AR p. 22; *See,* AR pp. 378-79.
[131] AR p. 22 (*citing* AR pp. 378-79).
[132] AR p. 22; *See,* AR p. 315.

neurologically stable.[133]  The June 19, 2013 treatment note shows that Dr. Scrantz diagnosed Plaintiff with lumbago.[134]

The ALJ further found that in January 2014, Plaintiff reported to Dr. Bozzelle that his pain was a seven out of ten in severity and Plaintiff was still a candidate for a spine stimulator trial.[135] During a follow-up visit to Dr. Bozzelle for a refill of medication on February 27, 2014, Plaintiff reported bilateral back pain radiating into his legs and he was diagnosed with lumbar pain and lower extremity numbness.[136]  A physical examination on March 27, 2014, revealed that Plaintiff walked with an antalgic gait with bilateral tenderness to lower back.[137]  The ALJ also found that Plaintiff was informed that he would need to be weaned off some medication slowly or risk having some withdrawal symptoms.[138]  The ALJ further found that on May 22, 2014 and June 13, 2014, Plaintiff reported to Dr. Bozzelle that his medications were helping and that he was unable to get the permanent stimulator because his workers' compensation case had settled.[139]

The ALJ found that as of October 9, 2014, Plaintiff wanted a refill on his Flexeril, Neurontin and Percocet medications, which were noted to help control his pain.[140]  The ALJ found that Dr. Bozzelle's physical examination of Plaintiff on October 9, 2014 revealed no changes and that Plaintiff walked with a slow, antalgic gait pattern.[141]  Dr. Bozzelle's November 7, 2014 treatment note shows Plaintiff was to continue to modify his activities due to lumbar pain that was

---

[133] AR p. 22; *See,* AR p. 315.
[134] AR p. 22 (*citing* AR pp. 312-65); *See*, AR p. 315.
[135] AR p. 22; *See,* AR pp. 370-73.
[136] AR p. 22 (*citing* AR pp. 366-414); *See,* AR pp. 368-69.
[137] AR p. 22; *See,* AR p. 463.
[138] AR p. 22; *See,* AR p. 451.
[139] AR p. 22 (*citing* AR pp. 447-54); *See,* AR pp. 447-48.
[140] AR p. 22; *See,* AR p. 457.
[141] AR p. 22; *See,* AR p. 457.

rated a seven out of ten in severity and Plaintiff's lower extremity numbness and tingling.[142]  Dr. Bozzelle found that Plaintiff's condition was managed with Percocet, Neurontin and Flexeril.[143]

The ALJ then reviewed the opinion of Bonnie Lammers, M.D., a state agency medical consultant, who reviewed the record and completed a Physical Residual Functional Capacity Assessment indicating that Plaintiff could perform light work.[144]  The ALJ gave Dr. Lammers' opinion "little weight" because "the record supports greater limitations."[145]

After reviewing "all of the evidence, such as treatment history, activities of daily living, medications and side effects, reports, and statements of record," the ALJ found Plaintiff's allegations to be partially credible.[146]  The ALJ pointed out that, "[d]uring the initial application, the field office personnel did not observe the claimant having any difficulties."[147]  The ALJ found that none of the health care providers who actually examined Plaintiff reported that Plaintiff was unable to work.  The ALJ noted that Dr. Eiserloh released Plaintiff to return to sedentary work on April 25, 2011[148] and that later records "only stated the claimant was continue [sic] with modified activity."[149]  As such, the ALJ concluded that the evidence as a whole does not establish that Plaintiff could not perform the full range of sedentary work.

Although Plaintiff claimed to be in extreme, constant pain, the ALJ found that the objective medical evidence showed that Plaintiff's condition improved with the spinal stimulator trial and that Plaintiff received some benefits from his pain medication.[150]  The ALJ noted that Plaintiff's

---

[142] AR p. 22 *See,* AR p. 455-56.

[143] AR p. 22 (*citing* AR pp. 455-66).

[144] AR p. 22 (*citing* AR pp. 55-63).

[145] AR p. 22.

[146] AR p. 22.

[147] AR p. 22 (*citing* AR pp. 55-63).

[148] AR p. 22 (*citing* AR p. 431).  The Court notes that Dr. Eiserloh's April 25, 2011 treatment note releasing Plaintiff to sedentary duty status is found at AR pp. 431-32.

[149] AR p. 22 (*citing* AR pp. 455-66); *See,* AR p. 456.

[150] AR p. 23 (*citing* AR pp. 312-414).

condition remained managed with Percocet, Neurontin and Flexeril as of November 7, 2014 and that objective testing, such as X-rays, revealed no abnormalities to support Plaintiff's subjective pain complaints.[151] The ALJ concluded that, "This undermines the claimant's credibility that he is in extreme pain and incapable of performing any work."[152] The ALJ noted that Plaintiff ambulates without assistive devices and Plaintiff testified that he still drives while taking his medication, which also show that Plaintiff is not as disabled as alleged.[153] Finally, the ALJ found that in the credible medical evidence of record and at the administrative hearing, Plaintiff showed none of the general indices of people who suffer from chronic pain such as atrophy, impairment of general nutrition, signs of premature aging and poor general health.[154] As such, the ALJ concluded that Plaintiff retains the ability to perform sedentary work and "the record does not support any greater limitations."[155]

A review of the record shows that the ALJ's RFC determination that Plaintiff can perform the full range of sedentary work is supported by substantial evidence. Specifically, the RFC determination is supported by the objective medical evidence of record. As the ALJ points out, Dr. Eiserloh is the only examining physician who opined that Plaintiff was limited to sedentary work "with frequent position changes."[156] While Dr. Eiserloh included that limitation in his April 25, 2011 treatment note, subsequent treatment notes dated June 16, 2011 August 22, 2011 state only that Plaintiff had been released to a "modified duty" status.[157] Dr. Eiserloh's treatment notes, however, are devoid of any information indicating that his physical examinations of Plaintiff

---

[151] AR p. 23 (*citing* AR pp. 455-66).
[152] AR p. 23.
[153] AR p. 23.
[154] AR p. 23.
[155] AR p. 23.
[156] *See*, AR p. 432.
[157] *See*, AR pp. 428, 430.

supported such limitations on Plaintiff's ability to sit and stand for extended periods of time.[158] Although Plaintiff consistently reported to Dr. Bozzelle that his lower back pain was worse with lying down, sitting, standing and walking between January 25, 2013 and May 22, 2014,[159] none of the treatment notes from Dr. Bozzelle's physical examinations of Plaintiff mention limitations on Plaintiff's ability to sit or stand, or that Plaintiff needs to alternate between these positions frequently.[160]

A review of Dr. Scrantz's treatment notes from June 11, 2012 to June 10, 2013 similarly shows that while Plaintiff consistently complained of lower back pain and tingling/numbness in his legs, Dr. Scrantz's physical examinations of Plaintiff revealed that Plaintiff had normal posture and gate, normal muscle strength and a normal full range of motion in all joints.[161] Further, on April 3, 2014, Dr. Lammers, a state agency medical consultant, concluded that Plaintiff could stand and/or walk for about six hours in an eight-hour workday and could sit with normal breaks for a total of about six hours in an eight-hour workday.[162] Dr. Lammers further found that Plaintiff could perform light work.[163] Although the ALJ gave Dr. Lammers' opinion "little weight"[164] because the ALJ felt Plaintiff could not perform light work as Dr. Lammers concluded,[165] Dr.

---

[158] *See*, AR pp. 421-46.
[159] AR pp. 368, 370, 374, 376, 380, 382, 384, 386, 388, 399, 448, 451, 453.
[160] *See*, AR pp. 368-401, 447-55.
[161] *See*, AR pp. 315, 321-22, 326, 331, 336-37, 340-41, 355-56. The Court notes that on August 15, 2011, Dr. Scrantz found that Plaintiff had "somewhat of an antalgic gait." AR p. 363.
[162] AR pp. 60-61.
[163] AR p. 62.
[164] *See*, AR p. 22.
[165] "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do

Lammers' opinion supports the ALJ's decision to disregard Dr. Eiserloh's assertion that Plaintiff needed to frequently alternate between sitting and standing during an eight-hour workday.

Finally, Dr. Kaufman's treatment notes from January 3, 2011 to April 30, 2013 primarily address Plaintiff's complaints of headaches and, therefore, do not support Dr. Eiserloh's assertion that Plaintiff needed to alternate between sitting and standing frequently during an eight-hour workday.[166] Not only are Dr. Kaufman's treatment notes devoid of any limitations on Plaintiff's ability to sit or stand, Dr. Kaufman's October 16, 2012 progress note specifically states that, "[Plaintiff] is able to walk and I have encouraged him to go out and walk as much as he can, which will help with his rehab."[167] Thus, Dr. Kaufman's October 16, 2012 treatment note seems to contradict Dr. Eiserloh's April 25, 2011 opinion regarding Plaintiff's need to frequently alternate between sitting and standing. In addition, Dr. Kaufman's progress notes show that he consistently found that Plaintiff's motor exam showed "normal bulk, tone and strength" and that Plaintiff's gait testing was normal.[168]

Based on the foregoing, the ALJ's RFC assessment that Plaintiff could perform a full range of sedentary work is supported by substantial objective medical evidence. Moreover, in asserting that the ALJ erred by failing to give sufficient weight to all of the opinions contained in Dr. Eiserloh's April 25, 2011 treatment note, Plaintiff is essentially asking this Court to reweigh the evidence of record. However, the case law is clear that in applying the substantial evidence standard the Court must review the entire record as a whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence

---

sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R § 404.1567(b). The ALJ ultimately concluded that Plaintiff could perform a full range of sedentary work.
[166] *See*, AR pp. 187-224.
[167] AR p. 192.
[168] AR pp. 187, 192, 197, 202, 208, 219.

weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the ALJ to decide and in the instant case, the ALJ resolved such conflicts in favor of finding that Plaintiff's ability to work is not limited by his alleged inability to stand, sit or walk for more than 30 minutes at a time. As shown above, the ALJ's RFC determination is supported by substantial evidence and the ALJ did not commit reversible error by disregarding Dr. Eiserloh's opinion that Plaintiff could return to sedentary work but "with frequent position changes."[169]

## VI. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that under sentence four of 42 U.S.C. § 405(g), the final decision of the United States Commissioner of Social Security, denying the application for disability insurance benefits filed by plaintiff, Cary Anthony Bayham, Jr., is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on January 23, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[169] *See*, AR p. 432.